**GREAT PLAINS CHEMICAL CO., INC., a Corporation, Plaintiff,**

v.

**MICRO CHEMICAL, INC., a Corporation, Defendant.**

**Civ. A. No. 80–W–63.**

United States District Court, D. Colorado.

Nov. 3, 1982.

Burton & Dorr by Robert C. Dorr, Denver, Colo., and Lowe, Kokjer, Kircher, Wharton & Bowman by Carter H. Kokjer, Kansas City, Mo., for plaintiff.

Max L. Wymer, Denver, Colorado, and Silverman & Silverman by Ely Silverman, Amarillo, Tex., for defendant.

## MEMORANDUM OPINION

WINNER, Judge.

This case is a monument to the risk of futility in asking a jury to decide a complex patent case. Undeniably, the right to jury trial exists in patent cases, but that right carries with it hazards which here occurred. There is widespread public outcry for the creation of a special court to hear all patent cases because, say the proponents of various plans, district judges don't understand them. Convincing arguments can be made in support of these charges, but at least district judges can't cause the confusion which here occurred. In cases tried to the court, the judge must decide one way or the other on all questions, but a jury can escape decision by failing to agree, and that's what happened here. However, let me hasten to add that never was there a more conscientious jury than this one which deliberated eight long days trying to resolve the case, and one juror, the mother of a year old baby, was driving daily 100 miles each way

on snow packed mountain roads. The jury's task can be best illustrated by the verdict form which was agreed to by the parties and which is appended. In defense of counsel submitting the verdict form, they and the court, were trying to do what is commanded by *Graham v. John Deere Co.* (1966) 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, and, with that decision in mind, a jury trial of a patent case is even more of a challenge all too often destined for disaster. It must be recalled that *John Deere* says:

> "While the ultimate question of patent validity is one of law (cit. om.) the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103 the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined."

The verdict form which is attached is a copy of the actual verdict which was returned by the jury after its 8-day deliberation, and from an examination of the verdict, it will be seen that the jury made the fact findings necessary to a determination of validity, *ultimately a matter for the judge rather than the jury.* See, *Graham v. John Deere, supra, Baustimler v. Rankin,* (1982) 5 Cir., 677 F.2d 1061. *Baustimler* was tried to a jury and it was reversed because:

> "In the instant case, the jury made no findings of fact on prior art and factual aspects of obviousness, nor did they make a finding on the issue of obviousness and validity, two issues which are clearly legal, not factual. There simply is no factual or legal determination that the patents are valid, given the general verdict form which deliberately left open the question of validity, using the phrase, 'valid patent, if any.'"

The discussion in *Baustimler* of the evils of a general verdict in a patent case emphasizes the reasons counsel here submitted the special verdict form, and I assume without deciding that the factual determinations required by *Baustimler* and *John Deere* were incorporated in the verdict form used. Undeniably, the verdict itself does not determine patent validity, and I have made no determination that any patent in suit is or is not valid. Moreover, for reasons which I shall explain presently, I shall make no such determination in this case, and, since the "ultimate question of patent validity is one of law," there is in fact no real determination of validity in this case.

Bearing in mind the form of verdict which was given to the jury, it is little wonder that after deliberation for a while, the jury sent out the following note:

> "We the jury would like clarification on questions 2(b) and 2(c)
>
> "(1) Is an affirmative answer on 2(b) in favor of the plaintiff or defendant?
>
> "(2) Is an affirmative answer to 2(c) in favor of the plaintiff or defendant?"

The questions were answered in open court and the answer was approved by both counsel. However, when a jury doesn't understand a verdict form well enough to know which side wins if a "yes" answer is given, it gives one cause for pause before joining in song with *Baustimler* where it is said that "Special interrogatories under Rule 49(a) whose songs of praise we have repeatedly sounded, have especial value in a patent case tried to a jury. Their use is not only practical, facilitating appellate review and avoiding lengthy (as patent cases invariably are) retrial for even relatively minor errors in jury instructions, but accords with the inherent divisional lines between the roles of judge and jury, the boundaries of which are so easily transgressed in patent cases tried to juries." However, *Baustimler* makes crystal clear that if a jury is to be used, special interrogatories must be used, and those interrogatories must result in jury made "specific factual findings to the three *John Deere* questions on obviousness to support a finding by the judge of validity."

Assuming without deciding that the interrogatories the jury was asked to respond to meet the requirements of *John Deere,* I must now rule on the requests of Micro Chemical to (a) file amended counterclaims, (b) enter judgment on the amended counterclaims, and (c) make a Rule 54(b) determination on those judgments.

Great Plains brought this declaratory judgment action seeking a declaration of invalidity of the enumerated claims of the three patents attacked in the suit. Micro Chemical counterclaimed saying as to each of the patents and each claim thereof under attack that the patents were valid and infringed. This, of course, is the way these declaratory judgment actions usually wind up in a pleading sense. Now, with the inconclusive jury verdict, Micro Chemical wants to amend its sundry counterclaims to obtain as to each claim of each patent in suit a declaratory judgment that the patent is valid and to leave for later jury determination a newly pleaded companion counterclaim as to every challenged claim of each patent in suit the question of infringement. Next, following this new set of pleadings filed after the jury was unable to agree on any question of infringement, Micro Chemical wants me to enter judgment on each of the new split claims asserting patent validity, and, finally, Micro Chemical wants me to make a Rule 54(b) determination as to the newly pleaded validity claims. Great Plains, on the other hand, says that a new trial on all issues is the only answer to the mess.

Surprisingly, neither counsel nor the court have found a case in point dealing with a partial jury verdict in a patent case, and seemingly we are ploughing virgin ground. However, Micro Chemical's requests give me many problems in addition to those inherent in apparent jury confusion over obviousness. Initially, there is the pleading problem of permitting a repleading splitting several claims which were originally pleaded singly. I don't think that can be done, but, if it can be, I don't think that the interests of justice permit any such amendment. I know of amendments to conform to proof, but I have never before heard of an amendment to conform to inability of a jury to agree.

If, somehow, the pleading problem can be overcome, and I can't figure out how it can be, the Rule 54(b) problem raises its ugly head. The last word from the Supreme Court on the use of Rule 54(b) appears in *Curtis Wright Corp. v. General Electric Co.* (1980) 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1. The rule itself says:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims of the parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

*Curtis Wright* says:

"Nearly a quarter of a century ago, in *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427 [, 76 S.Ct. 895, 100 L.Ed. 1297] (1956), this Court outlined the steps to be followed in making determinations under Rule 54(b). A district court must first determine that it is dealing with a 'final judgment'." It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'

"Once having found finality, the district court must go on to determine whether there is any just reason for delay. Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a 'dispatcher.' It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised 'in the interest of sound judicial administration.'

"Thus, in deciding whether there are no just reasons to delay the appeal of individual final judgments in a setting such as this, a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.' It was therefore proper for the District Judge here to consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals."

A quick reading of *Curtis Wright* shows the many reasons for refusing Micro Chemical's request for a judgment and for a Rule 54(b) finding on its requested post trial amendments to split its counterclaims. Among the reasons for denying the request are,

(1) As I shall explain later, even if the splitting of claims were to be permitted, I don't think that there would be a final judgment, and I think this because there would be no "ultimate disposition of an individual claim."

(2) Even if there could be a final judgment on the split claims, there is every reason to delay entry of an appealable judgment until there is a resolution of the question of infringement, vel non. If there is no infringement, there can be no judgment.

(3) Certainly, as a matter of sound judicial administration, there should be no piecemeal appeals of these patents. If there isn't any infringement, the Court of Appeals isn't going to rule on patent validity, and it would be a monstrous waste of time of the Court of Appeals to certify the validity question on the basis of the inconclusive jury verdict.

(4) Everyone agrees that the infringement question must be tried again, and it isn't going to add much time to the retrial to let a single jury decide validity and infringement.

(5) Sound judicial administration would require that a Rule 54(b) determination be not made even if there were a final judgment on one or more separate claims.

Moreover, there is an even more important reason for refusing to enter judgments of validity leaving decision as to infringement of each claim for another jury at another time [with or without a Rule 54(b) determination]. The all important reason is *Electrical Fittings Corp. v. Thomas Betts & Co.* (1939) 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263. There, a bill in equity for patent infringement was tried to the court. "The District Court held claim 1 valid but not infringed and claim 2 invalid. Instead of dismissing the bill without more, it entered a decree adjudging claim 1 valid but dismissing the bill for failure to prove infringement." [That's essentially the judgment Micro Chemical wants entered here insofar as it wants a judgment of validity.] The opinion continues:

"The petitioners [whose position was comparable to that of Great Plains here] appealed to the Circuit Court of Appeals from so much of the decree as adjudicated claim 1 valid. The appeal was dismissed on the ground that the petitioners had been awarded all the relief to which they were entitled, the litigation having finally terminated in their favor. The court was of the opinion that the decree would not bind the petitioners in subsequent suits on the issue of validity of claim 1.

"We granted certiorari because of an alleged conflict of decision. A party may not appeal from a judgment or decree in his favor, for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree. But here the decree itself purports to adjudge the validity of claim 1, and though the adjudication was immaterial to the disposition of the cause, it stands as an adjudication of one of the issues litigated. We think the petitioners were entitled to have this portion of the

decree eliminated, and that the Circuit Court of Appeals had jurisdiction, as we have held this court has, to entertain the appeal, not for the purpose of passing on the merits, but to direct reformation of the decree."

So, if I were to go along with Micro Chemical's request, the Court of Appeals would have jurisdiction to, and I am confident it would, set the judgment aside, because, unless and until there is proven infringement, the decision is advisory only and there is no justiciable case or controversy.[1] It boils down to that which is to me an unavoidable conclusion. If a judge can't find validity in the absence of infringement [and he can't under *Electrical Fittings Corp.*] a jury's findings of fact which would support a judge's finding of validity won't stand up if the jury is unable to decide if there is infringement and if the judge can't pass on the question because the assignee of the patent demanded a jury to decide all fact questions.

As I have mentioned, no one has found a case in which this problem has come up under a partial jury verdict, but the conclusion that the partial verdict decides nothing is mandated by *Mobil Oil Corporation v. Filtrol Corporation* (1974) 9 Cir., 501 F.2d 282.

"The trial court not only found the patents not infringed (on which we affirm) but also found the patents valid.

"An adjudication on validity was reversed by the Supreme Court when there had also been a holding of non-infringement. *Electrical Fittings Corp. v. Thomas & Betts Co.,* 307 U.S. 241 [, 59 S.Ct. 860, 83 L.Ed. 1263].

"*Altvater v. Freeman,* 319 U.S. 359 [, 63 S.Ct. 1115, 87 L.Ed. 1450] states: 'To hold a patent valid if it is not infringed is to decide a hypothetical case.' There, only one claim of a patent was involved in the issues raised by the complaint and answer, and the claim was held not infringed. However, a counterclaim raised the validity of other claims of the patent. The issues raised in the counterclaim as to the validity of the other claims of the patent were not moot, and the judgment was reversed.

.     .     .     .     .

[The opinion then discusses many cases, some of which seem on their face to be contradictory, but those cases are distinguished by Judge Carter.]

.     .     .     .

"Our case concerns a holding below that the patent was valid and not infringed. The cases cited by Mobil do not negate or control our ruling in this case.

"We hold the trial court erred in holding the patents valid, since it held the patents were not infringed."

■ Accordingly, having in mind the fact findings of the jury on matters going to patent validity and the inability of the jury to agree on infringement of any claim of any patent, I am unable to make—indeed I am prohibited from making—the ultimate decision as to validity of any claim of any patent. Absent infringement, there is no case or controversy which could support a naked judgment of validity, and there is no jury finding of infringement. Therefore, I can enter no judgment of validity, and, even if I entered a judgment of validity of any claim of any patent, I would not make a Rule 54(b) determination. I refuse the post trial request to amend to split the claims into separate claims of validity of each patent claim apart from claims of infringement. I do this without prejudice to the renewal of any such request to amend

1. At first blush, *Altvater v. Freeman,* (1943) 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450, can be argued to support Micro Chemical's request for a judgment of validity, but the argument won't stand scrutiny. It is there said, "To hold a patent valid if it is not infringed is to decide a hypothetical case. But the situation in the present case is quite different. We have here not only a bill and answer but a counterclaim. Though the decision of noninfringement disposes of the bill and answer, it does not dispose of the counterclaim." The counterclaim in *Altvater* was not the counterclaim we are talking about here. It was aimed at the validity of license agreements, and here the counterclaim is really just another way of framing a "bill and answer." Also, in *Altvater* additional patent claims were involved in the counterclaim.

made in advance of another trial. However, I think it fair to say that I can't imagine how these claims can be cut in half under the ruling of *Electrical Fittings,* but defendant can raise the question again if it wants to.

Distasteful as it is to all concerned, the only answer to the inability of the jury to agree on infringement of any claim of any patent is a new trial on all issues, and that is what I order.

## APPENDIX

### SPECIAL VERDICT

I shall read to you at this time the special verdict. This will be given to you as will all the written instructions, and it reads as follows:

We, the jury, present our answers to questions submitted by the Court to which we have unanimously agreed. Before answering these questions, we have unanimously agreed upon the answers to each of the questions.

1. Do you find by a preponderance of the evidence that prior art which should have been considered on the issue of obviousness was not considered by the Patent Office during its examination of the application for patent 3,437,075?

Yes _____ No ___X___

2. (a) If you answer yes to Question No. 1, then answer this question 2(b). If your answer to Question No. 1 is no, ignore this question 2(b) and answer Question No. 2(c) below.

2. (b) Do you find by a preponderance of the evidence that the differences between the subject matter of each of the asserted patent claims 12, 14, 15, 17 and 18 of patent 3,437,075 and the prior art are such that the subject matter of such claims as a whole would have been obvious at the time of the invention of patent 3,437,075 was made to a person having ordinary skill in the pertinent art?

Answer yes or no for each claim.

| | | |
|---|---|---|
| Claim 12 | Yes _____ | No _____ |
| Claim 14 | Yes _____ | No _____ |
| Claim 15 | Yes _____ | No _____ |
| Claim 17 | Yes _____ | No _____ |
| Claim 18 | Yes _____ | No _____ |

2. (c) Answer this question if you answer *no* to question 1. Do you find by clear and convincing evidence that the difference between the subject matter of each of the asserted patent claims 12, 14, 15, 17, 18 and 19 of patent 3,437,075 and the prior art are such that the subject of such claims as a whole would have been obvious at the time the invention of patent 3,437,075 was made to a person having ordinary skill in the pertinent art? Answer yes or no for each claim.

| | | |
|---|---|---|
| Claim 12 | Yes _____ | No ___X___ |
| Claim 14 | Yes _____ | No ___X___ |
| Claim 15 | Yes _____ | No ___X___ |
| Claim 17 | Yes _____ | No ___X___ |
| Claim 18 | Yes _____ | No ___X___ |

3. Do you find by a preponderance of the evidence that prior art which should have been considered on the issue of obviousness was not considered by the Patent Office during its examination of the application for patent 3,498,311?

Yes _____ No ___X___

4. (a) If you answer yes to Question 3, then answer question 4(b). If your answer to Question 3 is no, ignore question 4(b) and answer Question No. 4(c) below.

4. (b) Do you find by a preponderance of the evidence that the differences between the subject matter of each of the asserted patent claims 2, 3 and 5 of patent 3,498,311 and the prior art are such that the subject of such claims as a whole would have been obvious at the time the invention of patent 3,498,311 was made to a person having ordinary skill in the pertinent art?

Answer yes or no for each claim.

| | | |
|---|---|---|
| Claim 2 | Yes _____ | No _____ |
| Claim 3 | Yes _____ | No _____ |
| Claim 5 | Yes _____ | No _____ |

4. (c) Do you find by clear and convincing evidence that the differences between the subject matter of each of the asserted patent claims 2, 3 and 5 of patent 3,498,311

and the prior art are such that the subject of such claims as a whole should have been obvious at the time the invention of patent 3,498,311 was made to a person having ordinary skill in the pertinent art? Answer yes or no for each claim.

Claim 2    Yes _____ No __X__
Claim 3    Yes _____ No __X__
Claim 5    Yes _____ No __X__

5. Do you find by a preponderance of the evidence that prior art which should have been considered on the issue of obviousness was not considered by the Patent Office during its examination of the application for Patent 3,670,923?

Yes _____ No __X__

6. (a) If you answer yes to Question No. 5, then answer question 6(b). If your answer to Question No. 5 is no, ignore question 6(b) and answer Question No. 6(c) below.

6. (b) Do you find by a preponderance of the evidence that the differences between the subject matter of each of the asserted patent claims 1, 2, 3, 4, 13, 18, 19, 23, 24 and 25 of patent 3,670,923 and the prior art are such that the subject matter of such claims as a whole would have been obvious at the time the invention of patent 3,670,923 was made to a person having ordinary skill in the pertinent art? Answer yes or no for each claim.

Claim 1    Yes _____ No _____
Claim 2    Yes _____ No _____
Claim 3    Yes _____ No _____
Claim 4    Yes _____ No _____
Claim 13   Yes _____ No _____
Claim 18   Yes _____ No _____
Claim 19   Yes _____ No _____
Claim 23   Yes _____ No _____
Claim 24   Yes _____ No _____
Claim 25   Yes _____ No _____

6. (c) Answer this question if you answer no to Question 5.

Do you find by clear and convincing evidence that the differences between the subject matter of each of the asserted patent claims 1, 2, 3, 4, 13, 18, 19, 23, 24 and 25 of patent 3,670,923 and the prior art are such that the subject of such claims as a whole would have been obvious at the time the invention of the 3,670,923 patent was made to a person having ordinary skill in the pertinent art? Answer yes or no for each claim.

Claim 1    Yes _____ No __X__
Claim 2    Yes _____ No __X__
Claim 3    Yes _____ No __X__
Claim 4    Yes _____ No __X__
Claim 13   Yes _____ No __X__
Claim 18   Yes _____ No __X__
Claim 19   Yes _____ No __X__ .
Claim 23   Yes _____ No __X__
Claim 24   Yes _____ No __X__
Claim 25   Yes _____ No __X__

7. Do you find by a preponderance of the evidence that the plaintiff Great Plains Chemical Co., Inc. has infringed Claim 12 of patent 3,437,075?

Yes _____ No _____

8. Do you find by a preponderance of the evidence that the plaintiff Great Plains Chemical Co., Inc. has infringed Claim 14 of patent 3,437,075?

Yes _____ No _____

9. Do you find by a preponderance of the evidence that the plaintiff Great Plains Chemical Co., Inc. has infringed Claim 15 of patent 3,437,075?

Yes _____ No _____

10. Do you find by a preponderance of the evidence that the plaintiff Great Plains Chemical Co., Inc. has infringed Claim 17 of patent 3,437,075?

Yes _____ No _____

11. Do you find by a preponderance of the evidence that the plaintiff Great Plains Chemical Co., Inc. has infringed Claim 18 of patent 3,437,075?

Yes _____ No _____

12. Do you find by a preponderance of the evidence that the plaintiff Great Plains Chemical Co., Inc. has infringed Claim 2 of patent 3,498,311?

Yes _____ No _____

13. Do you find by a preponderance of the evidence that the plaintiff Great Plains Chemical Co., Inc. has infringed Claim 3 of patent 3,498,311?

Yes _____ No _____

14. Do you find by a preponderance of the evidence that the plaintiff Great Plains Chemical Co., Inc. has infringed Claim 5 of patent 3,498,311?

Yes _____ No _____

15. Do you find by a preponderance of the evidence that the plaintiff Great Plains Chemical Co., Inc. has infringed Claim 23 of patent 3,670,923?

Yes _____ No _____

16. Do you find by a preponderance of the evidence that the plaintiff Great Plains Chemical Co., Inc. has infringed Claim 24 of patent 3,670,923?

Yes _____ No _____

17. Do you find by a preponderance of the evidence that the plaintiff Great Plains Chemical Co., Inc. has infringed Claim 25 of patent 3,670,923?

Yes _____ No _____

Dated at Denver, Colorado this 11th day of February, 1982.

/s/  William Wells
FOREPERSON